IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

UNITED STATES OF AMERICA

v.

AHMED ABDALLA ALLAM

CASE NO. 1:23-CR-00010-MAC

**REPORT AND RECOMMENDATION DENYING DEFENDANT'S MOTION TO
SUPPRESS EVIDENCE**

This case is assigned to the Honorable Marcia A. Crone, United States District Judge. On February 9, 2023, Judge Crone referred Defendant Ahmed Abdalla Allam's *Motion to Suppress Evidence* (Doc. No. 21) to the undersigned United States Magistrate Judge for consideration and entry of proposed findings and recommended disposition.  Doc. No. 24.

On January 29, 2023, after weeks of growing suspicion that Allam may be involved in criminal activity, police officers inside a marked Beaumont Police Department ("BPD") patrol unit witnessed Allam operate his vehicle with an obscured license plate and fail to properly engage his turn signal on two separate occasions.  BPD Officer Jacolby Hatcher stopped Allam's vehicle for committing such traffic violations, however, Allam repeatedly refused to lower his window, and refused to provide Officer Hatcher with his driver's license upon request.  Officer Hatcher repeatedly commanded Allam to follow his requests to no avail.  At that point, Officer Hatcher requested backup patrol units, resulting in Allam's arrest for committing several traffic violations. The BPD officers then initiated their inventory of Allam's vehicle and found drug paraphernalia, a fully loaded AR-15-style magazine, and eventually, an AR-15-style rifle.  A Grand Jury indicted Allam for one count of possession of a firearm in a school zone.

Allam now seeks to suppress the discovered evidence found in his vehicle as a result of an unlawful arrest and search, in violation of the Fourth Amendment.  Doc. No. 21.  On March 20, 2023, the court held a hearing on the motion.  After reviewing the parties' briefings, as well as the BPD officers' live body camera footage and in-court testimony, the court finds that the BPD officers lawfully stopped and detained Allam's vehicle for violating several provisions of the Texas Transportation Code, lawfully arrested Allam for committing such traffic violations, satisfied their burden in showing they conducted a lawful inventory of Allam's vehicle, and accordingly, had probable cause to search the rest of his vehicle once they discovered illicit contraband.  Therefore, the undersigned recommends denying Defendant Allam's instant *Motion to Suppress Evidence*.  Doc. No. 20.

## I.   **Factual and Procedural Background**

In early January 2023, the BPD became aware that Allam had stationed his Sport Utility Vehicle ("SUV") for several weeks across the street from the St. Anthony Cathedral Basilica School (hereinafter, "the school" or "St. Anthony's"), and separately, near Temple Emanuel, a Jewish synagogue in downtown Beaumont.  Doc. No. 30 at 1–2; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 23:8–17.  Several of the school's employees and families of students grew wary of Allam's near-constant presence, resulting in at least nine (9) calls-for-service to the BPD citing a "suspicious person and vehicle."  Doc. No. 30 at 2; *see also* Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 23:8–17, 35:6–39:7, 49:9–10, 68:25–69:7, 80:2–5.  School officials repeatedly requested that Allam move his SUV, however, Allam refused to do so.  Doc. No. 30 at 2; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 35:15–18, 69:3–7.  Instead, citizens and officers described Allam as being "defiant" and "uncooperative" with their requests.  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 35:15–18.

Further, St. Anthony's officials reported that Allam had spoken to a school employee, stating during the weekend of January 28, 2023, that "come . . . Monday morning[,] you won't need to worry about me anymore."  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 36:24–37:5; *id.* at 37:22–24; Doc. No. 30 at 3 ("Specifically, when asked to move his car, Allam refused and stated[,] 'you will not need to worry about me after Monday.'").  The BPD officers noted that students returned to St. Anthony's for classes the following Monday, and grew worried considering Allam's positioning directly across the street from the school.  Doc. No. 30 at 2; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 8:8–11 (noting Allam's vehicle was approximately 50 feet from the St. Anthony's school playground), 38:1–6.  Thus, growing suspicious that "criminal activity was afoot based on all of the information," and particularly worried that Allam may have planned a school shooting, the BPD officers conducted "special attention patrol," surveilling his parked vehicle.  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 79:14; *id.* at 23:8–14, 35:19–24, 79:23–80:5; *id.* at 23:1–8, 24:12–14, 49:6–8, 69:3–7, 74:13–15.

On or about Wednesday, January 25, 2023, Allam received a citation for his vehicle's obscured license plate, in violation of Texas Transportation Code Section 504.945.  Doc. No. 21 at 1; Doc. No. 30 at 4; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 7:21–25, 10:10–14.  At the time of his citation, the BPD officers explained to him that he must park his vehicle and "fix his obscured license plate before driving on a Texas public roadway again."  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 10:11–14.  At approximately 4:00 p.m. on the evening of Sunday, January 29, 2023, the BPD instructed Officer Jacolby Hatcher to surveil Allam's vehicle, and pull his vehicle over if he continued to drive with an obstructed license plate.  *Id.* at 10:16–25.  Officer Hatcher parked his marked patrol vehicle approximately 100 feet behind Allam's SUV for approximately five (5) hours.  *Id.* at 10:5–19.

At around 9:05 p.m. later that same evening, without engaging his turn signal, Allam moved his vehicle from its parked position, and drove onto the roadway adjacent to the school.[1] *Id.* at 10:20–11:15. Officer Hatcher closely followed Allam's car. *Id.*; *see also* Gov't's Ex. 2 at 0:31–1:00 (Officer Jacolby Hatcher's "Watch Guard" dash camera footage). Allam then drove up to an intersection and engaged his turn signal about 20 feet before making his right-hand turn.[2] Gov't's Ex. 2, Doc. Nos. 36, 38 at 0:42–52; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 11:20–24. After Allam turned right, Officer Hatcher activated the emergency lights on his patrol vehicle and Allam pulled over and stopped his car. Gov't's Ex. 2, Doc. Nos. 36, 38 at 1:00; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 11:8–11.

Officer Hatcher exited his vehicle, approached Allam's window, and requested that Allam lower his window and provide him with his driver's license and proof of insurance. Gov't's Ex. 2, Doc. Nos. 36, 38 at 1:39–4:00; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 12:7–18. Allam shook his head and repeatedly refused to lower his window and comply with Officer Hatcher's instructions. Gov't's Ex. 2, Doc. Nos. 36, 38 at 1:39–4:00. At this juncture, Officer Hatcher told Allam that he was detained, and dispatched for a backup patrol unit to arrive at the scene. Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 12:19–13:4. While waiting for backup units to arrive, Officer Hatcher and his partner repeatedly asked Allam to lower his window and comply with their instructions. Gov't's Ex. 2, Doc. Nos. 36, 38 at 4:00–7:01. Once backup patrol units arrived,

---

[1] Texas Transportation Code, Section 545.104 states: "(a) An operator *shall* use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position." TEX. TRANSP. CODE § 545.104(a) (emphasis added).

[2] Texas Transportation Code, Section 545.104 requires that "[a]n operator intending to turn a vehicle right or left *shall* signal continuously for *not less than the last 100 feet* of movement of the vehicle before the turn." TEX. TRANSP. CODE § 545.104(b) (emphases added). Both Officer Hatcher and his dash camera footage unambiguously show that Allam failed to properly engage his turn signal before he reached 100 feet of making his right turn. *See* Gov't's Ex. 2, Doc. Nos. 36, 38 at 0:42–52; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 11:20–24.

Sergeant Eric Kvarme, Jr. took over Allam's traffic stop.  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 13:5–12.

Sergeant Kvarme also asked Allam to lower his window and provide his driver's license, however, Allam steadfastly refused to comply with his orders. Gov't's Ex. 4, Doc. Nos. 36, 38 at 6:23–58 (Officer Jacob Trahan's body camera footage).  Sergeant Kvarme then commanded Allam to exit his vehicle, but Allam remained obstinate.  *Id.* at 6:58–7:04, 7:49–8:14, 8:55–9:14.  At this point, Sergeant Kvarme placed Allam under arrest for driving his vehicle with an obstructed license plate.  *Id.* at 9:14–10:00; Gov't's Ex. 3A at 3, 14.  During his arrest, Sergeant Kvarme asked Allam if he had any weapons or illegal contraband in his vehicle, to which Allam responded he did not.  Gov't's Ex. 4, Doc. Nos. 36, 38 at 10:55–11:12; *see also* Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 42:12–20.

After placing Allam under arrest, Sergeant Kvarme and Officer Jacob Trahan began performing an inventory of Allam's SUV, as prescribed by BPD policy.  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 43:5–17; Gov't's Ex. 4, Doc. Nos. 36, 38 at 24:30 (beginning of inventory of Allam's vehicle).  During the inventory, Officer Trahan waded through piles of trash in Allam's SUV, and found a black backpack wedged between the front driver's seat and passenger seat, directly behind the armrest.  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 56:3–14; Gov't's Ex. 4, Doc. Nos. 36, 38 at 25:53.  In order to accurately document the backpack, Officer Trahan picked up the backpack, and peered into the partially unzipped opening at the top of the backpack, at which point a clear, plastic marijuana grinder with marijuana residue fell out of the backpack and landed onto the passenger seat.[3]  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 56:20–57:24, 64:24–65:2; Gov't's Ex.

---

[3] "Drug Paraphernalia" is defined as "equipment, a product, or material that is used or intended for use in planting, propagating, . . . packaging, repackaging, storing, containing, or concealing a controlled substance in violation of this chapter or in injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled

4, Doc. Nos. 36, 38 at 26:29–31 (moment when marijuana grinder fell out of Allam's backpack); *see also* Gov't's Ex. 5A.

At this point, Officer Trahan paused his inventory of Allam's vehicle and searched through Allam's backpack, looking for more drug paraphernalia, when he discovered two boxes of rifle ammunition, approximately one ounce of suspected synthetic marijuana, $1,700.00 cash, and a fully loaded AR-15-style magazine.[4]  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 58:1–7; Gov't's Ex. 4, Doc. Nos. 36, 38 at 28:05–29; *see also* Gov't's Ex. 5A.  Officer Trahan then surmised that "there is probably a rifle in here somewhere -- I don't know," and received permission from Sergeant Kvarme to widen the scope of the search to the entire vehicle to find the rifle.  Gov't's Ex. 4, Doc. Nos. 36, 38 at 28:11–27; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 65:16–66:6.  Officer Trahan then proceeded to conduct a search of the entire vehicle and found an AR-15 style rifle that matched the previously discovered magazines, as well as a rifle manual.  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 69:20–70:19, 71:24 ("I was doing more of a search while [Sergeant Kvarme] continued the inventory.").

On February 6, 2023, Allam filed the instant *Motion to Suppress Evidence* (Doc. No. 21). On February 9, 2023, Judge Crone referred the instant motion to the undersigned for consideration and disposition.  Doc. No. 24.  On February 17, 2023, the Government filed its *Response to*

---

substance in violation of this chapter." TEX. HEALTH AND SAFETY CODE § 481.002(17).  A marijuana grinder is clearly considered "drug paraphernalia" within the meaning of the statute.  *See id.* § 481.002(17) (defining as part of the definition "drug paraphernalia" a "separation gin or sifter used or intended for use in removing twigs and seeds from or in otherwise cleaning or refining marihuana"); *cf. Interest of A.L.S.*, 660 S.W.3d 257, 265 (Tex. App.—San Antonio 2022, pet. denied) (noting that "a grinder and pipes" constituted drug paraphernalia); *Rutherford v. State*, No. 06-09-00056-CR, 2009 WL 3643527, at *2 (Tex. App. — Texarkana Nov. 5, 2009, no pet.) (same).

[4] It is a violation of the Texas Health and Safety Code, and Class B misdemeanor, to possess two (2) ounces or less of marijuana.  TEX. HEALTH AND SAFETY CODE § 481.121(b)(1).  It is also unlawful to possess a firearm in a school zone, as Allam possessed one in his vehicle while stationed across the street from the school.  18 U.S.C. § 922(q)(2)(A).

*Defendant's Motion to Suppress Evidence* ("Response") (Doc. No. 30).  On March 20, 2023, the undersigned held a hearing on the pending motion.  Mar. 20, 2023 Hr'g.  At the hearing, the court admitted, with no objection, all of the Government's proffered exhibits, and heard the live testimony of Officer Jacolby Hatcher, Sergeant Kvarme, and Officer Jacob Trahan.  With the matter briefed and ripe for consideration and disposition, the undersigned will now turn to its analysis of the pending motion.

## II.   <u>Discussion</u>

In his *Motion to Suppress Evidence* (Doc. No. 21), and again at oral argument during the motion hearing, Allam argued that "[t]he arrest, detention, and search were warrantless," and in violation of Allam's Fourth Amendment rights to be free from an unreasonable search and seizure. Doc. No. 21 at 1–2.  Allam's principal argument rests on his contention that the BPD officers lacked authority under the Texas Transportation Code to arrest and detain Allam for driving with an obstructed license plate because the statute does not explicitly authorize such an arrest.  *Id.*; *see also* Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 31:22–32:12.  Essentially, Allam argues that the BPD officers arrested him for a violation under Subtitle A of the Texas Transportation Code—driving with an obstructed license plate—however, this subtitle does not explicitly provide the BPD officers with arrest authority, in contrast to Subtitle C of the Code.  Doc. No. 21 at 1–2. Accordingly, Allam urges that the BPD officers exceeded the scope of their authority when they arrested him for driving with an obstructed license plate, and therefore their subsequent inventory and search of his vehicle constituted an unlawful search of his car.  *Id.*  Thus, Allam contends that the court should exclude evidence of the marijuana grinder, synthetic marijuana, ammunition, and rifle.  *Id.*

In its *Response* (Doc. No. 30) and at oral argument, the Government contends that: (1) Officer Hatcher's stop of Allam's vehicle for committing a traffic violation was lawful under the standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968); (2) even if the Texas Transportation Code does not permit an officer to arrest an individual for driving with an obstructed license plate, Allam's arrest was lawful because Officer Hatcher observed Allam commit multiple traffic violations under different provisions of the Transportation Code, which *do* confer arrest authority to officers; (3) the BPD officers followed their department's policies in conducting an inventory of Allam's SUV; and (4) when Officer Trahan's inventory revealed a marijuana grinder, the BPD officers had probable cause to search the rest of Allam's vehicle for contraband.  Doc. No. 30 at 7–14; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 30:3–31:18, 32:21–33:21.  The court agrees with the Government regarding all four arguments.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST. amend. IV. A warrantless search is presumptively unreasonable unless the Government satisfies its burden of showing that the search fell within an exception to the warrant requirement.  *United States v. Aguirre*, 664 F.3d 609, 610 (5th Cir. 2011).  If the Government fails to satisfy its burden, evidence obtained through an unreasonable search may be suppressed under the exclusionary rule.  *See Herring v. United States*, 555 U.S. 135, 139 (2009) (citation omitted) ("Nonetheless, our decisions establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial.").

However, "suppression is not an automatic consequence of a Fourth Amendment violation," and the U.S. Supreme Court has characterized exclusion through suppression as an "extreme sanction" that courts should apply sparingly.  *Id.* at 137, 141 (citations and internal

quotation marks omitted) (warning that application of the exclusionary rule imposes "substantial social costs" that must be outweighed by the rule's benefit of deterrence); *United States v. Leon*, 468 U.S. 897, 926 (1984) (footnote omitted); *see also Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (quoting *Leon*, 468 U.S. at 907) ("Suppression of evidence, however, has always been our last resort, not our first impulse. The exclusionary rule generates 'substantial social costs,' . . . which sometimes include setting the guilty free and the dangerous at large.").

The court will begin its analysis with Officer Hatcher's stop of Allam's vehicle under the standard set forth in *Terry*, and proceed chronologically from the stop of Allam's car to the inventory and search of his SUV thereafter.

### A.   The Stop and Detention of Allam's Vehicle

Allam does not dispute the legality of the initial stop of his vehicle.  Neither in his motion (Doc. No. 21), nor at the suppression hearing, did Allam contest the legality of the traffic *stop*, except to mention that Allam had already received a prior citation for this violation; the prior citation, however, is of no relevance to the instant *Terry* analysis.  *See generally* Doc. No. 21; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 48:15–49:11.  Instead, it appears that Allam contests the *detention* of his vehicle for a prolonged period of time.  Doc. No. 21 at 2.

"'Traffic stops are deemed seizures for the purposes of the Fourth Amendment'" and are analyzed under the standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968).  *United States v. Henry*, 853 F.3d 754, 756 (5th Cir. 2017) (quoting *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)); *see also United States v. Holmes*, No. 21-10959, 2022 WL 3335775, at *1 (5th Cir. Aug. 12, 2022) (citing *Rodriguez v. United States*, 575 U.S. 348, 354 (2015)) ("A traffic stop is more analogous to a *Terry* stop than to a formal arrest.").  Under *Terry*, the constitutionality of a traffic stop is analyzed under a two-part test:  (1) whether the stop was justified at its inception;

and (2) whether the officer's subsequent actions were "reasonably related in scope to the circumstances that justified the stop" of the vehicle.  *United States v. Walker*, 49 F.4th 903, 906–07 (5th Cir. 2022); *Henry*, 853 F.3d at 756; *Lopez-Moreno*, 420 F.3d at 430.  For comprehensive purposes, the court will address both *Terry* prongs in turn.

<em>i.        Justification of the Stop</em>

First, the court must begin by analyzing Officer Hatcher's justification to stop Allam's vehicle.  "A traffic stop is justified at its inception when an officer has 'an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle.'"  *Walker*, 49 F.4th at 907 (quoting *Lopez-Moreno*, 420 F.3d at 430); *see also Henry*, 853 F.3d at 756–57 (same).  Reasonable suspicion is a "low threshold," requiring more than a "mere hunch," and exists when an "'officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure.'"  *Walker*, 49 F.4th at 907 (quoting *Lopez-Moreno*, 420 F.3d at 430).  Logically then, when an officer actually witnesses an individual commit one or multiple traffic violations, that officer has, at minimum, reasonable suspicion to justify making a traffic stop.  *See id.* at 905, 907 (holding that after officers witnessed defendant's car "travel[] at a high rate of speed," and "cross all three lanes and turn on the outside lane of traffic," that "[h]aving witnessed two traffic violations, the officers had reasonable suspicion sufficient to justify making a traffic stop.").

Moreover, "an officer's subjective intentions have no impact on analyzing reasonable suspicion" and are "irrelevant in determining whether his or her conduct violated the Fourth Amendment."  *Lopez-Moreno*, 420 F.3d at 432; *see also United States v. Gladney*, 809 F. App'x 220, 225 (5th Cir. 2020) (quoting *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003)) ("'An officer may stop a motorist for a traffic violation even if, subjectively, the officer's

true motive is to investigate unrelated criminal offenses.'"); *United States v. Bams*, 858 F.3d 937, 943 (5th Cir. 2017) (quoting *United States v. Gillyard*, 261 F.3d 506, 509 (5th Cir. 2001)) ("But the 'subjective motivations of police are deemed irrelevant as long as their conduct does not exceed what they are objectively authorized to do.'").

Here, having witnessed Allam drive with an obstructed license plate, and fail to properly engage his turn signal on two separate occasions—once while driving onto the road from a parked position, and the second time prior to making his right-hand turn—Officer Hatcher clearly satisfies the first prong of the *Terry* analysis.  *Walker*, 49 F.4th at 905, 907; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 11:2–12:2; Gov't's Ex. 2 at 0:31–1:00 (Officer Hatcher's dash camera footage observing and following Allam's SUV.  Officer Hatcher's vehicle was situated approximately 100 feet behind Allam's SUV, and his dash camera footage clearly shows that Allam drove with an obstructed license plate in violation of Texas Transportation Code Section 504.945(7),[5] failed to properly signal after driving away from the curb, and failed to signal within 100 feet of making his right-hand turn, both in violation of Texas Transportation Code Sections 545.104(a) and (b).  Gov't's Ex. 2 at 0:31–1:00.

---

[5] The Fifth Circuit has held that a license plate frame constitutes a "covering" within the meaning of Section 509.945(7)'s precursor, as Allam's license plate did so here.  *United States v. Contreras-Trevino*, 448 F.3d 821, 824 (5th Cir. 2006) (discussing *United States v. Granado*, 302 F.3d 421 (5th Cir. 2002)) ("Nothing in *Granado* suggests that a license plate can never be a covering . . . In fact, by reaching the 'disturbing [sic] angular visibility' question, the *Granado* court implicitly assumed that such a frame was a 'covering' within the meaning of the statute.").

Further, Officer Hatcher's dash camera footage clearly shows that Allam's license plate frame covered the top and bottom portions of his license plate, obscuring his license plate's state name of New York. *See, e.g.*, Gov't's Ex. 2 at 1:31.  It is well-settled that this constitutes a violation of Section 504.945(7) of the Texas Transportation Code.  *See United States v. Montes-Hernandez*, 350 F. App'x 862, 867–68 (5th Cir. 2009) (holding officer had objectively reasonable suspicion that traffic violation occurred when defendant's license plate's state name "was at least one-half obscured"); *United States v. Rodriguez-Martinez*, No. DR-11-CR-785-AM, 2013 WL 12098687, at *3 (W.D. Tex. Feb. 11, 2013) ("[T]his Court finds that the Defendant, at the time of the traffic stop, was in violation of [the precursor to Section 504.945 of the Transportation Code] by having a license plate attached to his vehicle which obscured half of the state name – TEXAS"), *aff'd*, 575 F. App'x 283 (5th Cir. 2014).

11

It is of no import that Officer Hatcher had prior knowledge of Allam's previously issued citation for an obstructed license plate, nor that his superiors requested that he surveil Allam's vehicle to find such wrongdoing—Officer Hatcher's live observation of Allam's traffic violations constitute an objective basis for conducting the traffic stop. *Bams*, 858 F.3d at 943; *Lopez-Moreno*, 420 F.3d at 432. Accordingly, Officer Hatcher easily satisfies the first prong of the *Terry* analysis because his live observations of Allam's traffic violations constituted proper justification for stopping Allam's vehicle. *Walker*, 49 F.4th at 906–07; *Henry*, 853 F.3d at 756; *Lopez-Moreno*, 420 F.3d at 430.

### ii. *Prolonged Detention of Allam's Vehicle*

Next, the court must analyze whether the BPD officers' detention of Allam's vehicle was "reasonably related in scope to the circumstances that justified the stop" in the first instance. *Walker*, 49 F.4th at 906–07; *Henry*, 853 F.3d at 756; *Lopez-Moreno*, 420 F.3d at 430. Here, the court finds that the BPD officers' actions during the traffic stop satisfied the second prong as well.

At approximately 9:05 p.m., Officer Hatcher stopped Allam's vehicle and repeatedly requested that he lower his window and provide his driver's license and proof of insurance. Doc. No. 30 at 4; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 12:7–13:2. Similarly, once Sergeant Kvarme arrived on the scene, he asked Allam to lower his window and provide his driver's license. Gov't's Ex. 4, Doc. Nos. 36, 38 at 6:23–58. For approximately twelve (12) minutes, until his ultimate arrest, Allam shook his head, repeatedly refused to lower his window, and merely placed his driver's license up to the window without ever handing it over to law enforcement officers. Gov't's Ex. 2 at 1:45–13:17. The court finds that this does not qualify as an unconstitutionally prolonged detention.

In this instance, the BPD officers acted within their legitimate investigatory scope of the instant *Terry* stop.  Generally, an officer's detention of a vehicle "must be temporary and last no longer than is necessary to effectuate the purpose of the stop."  *United States v. Henry*, 37 F.4th 173, 176 (5th Cir. 2022) (citing *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004)); *Lopez-Moreno*, 420 F.3d at 430.  After stopping a vehicle, however, it is within the legitimate scope of a police officer's investigation to examine the driver's license and registration and run a computer check on the individual to investigate for any outstanding warrants or to determine whether the vehicle is stolen.  *United States v. Glenn*, 931 F.3d 424, 429 (5th Cir. 2019) (citation omitted) ("[A]n officer has the time needed to issue a traffic citation, examine the driver's license, insurance, and registration, and ascertain if there are outstanding warrants."); *Lopez-Moreno*, 420 F.3d at 430 (citation omitted) ("In the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen."); *Brigham*, 382 F.3d at 507–08 (citation omitted) ("[T]his court has found no constitutional impediment to a law enforcement officer's request to examine a driver's license and vehicle registration or rental papers during a traffic stop and to run a computer check on both.").

If an officer wishes to extend the stop beyond this point, an officer must develop reasonable suspicion of another crime, "allowing the officer to 'prolong the suspect's detention until he has dispelled that newly-formed suspicion.'"  *Glenn*, 931 F.3d at 429 (quoting *United States v. Villafranco-Elizondo*, 897 F.3d 635, 641 (5th Cir. 2018)); *Lopez-Moreno*, 420 F.3d at 431 ("[O]nce all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter unconstitutionally prolongs the detention."); *Brigham*, 382 F.3d at 507 (officer may prolong detention provided that they have "reasonable

suspicion, supported by articulable facts" that developed during the stop). An officer's reasonable suspicion rests on their "particularized and objective basis for suspecting the person stopped of criminal activity" based on the totality of the circumstances, such as the events that occurred leading up to the stop. *Glenn*, 931 F.3d at 429 (citations and quotation marks omitted). It is well-established that evasive behavior and nervousness can lead to a finding of reasonable suspicion. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("[N]ervous, evasive behavior is a pertinent factor in determining reasonable suspicion."); *see also United States v. Baker*, 47 F.3d 691, 694–95 (5th Cir. 1995).

Thus, the court has no alternative but to find that the BPD officers did not unconstitutionally prolong the detention of Allam's vehicle. First, Allam refused to comply with Officer Hatcher and Sergeant Kvarme's orders to lower his window and hand over his driver's license. Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 12:7–13:2; Gov't's Ex. 2 at 1:45–13:17. Second, this detention lasted around twelve (12) minutes in total, during which, both BPD officers attempted to receive Allam's driver's license so that they may permissibly identify him and run a computer check on him. Gov't's Ex. 2 at 1:45–13:17. These circumstances simply cannot constitute an unconstitutionally prolonged detention. *Glenn*, 931 F.3d at 429 (officers have legitimate right to examine a driver's license); *United States v. Jordan*, 135 F. App'x 783, 784 (5th Cir. 2005) (per curiam) (holding that a twelve-minute stop of a vehicle to complete a citation was not an unreasonable nor unconstitutional extension of the defendant's traffic stop).

Indeed, a prolonged detention only occurs *after* an officer runs the driver's license, *Lopez-Moreno*, 420 F.3d at 431, and Allam's evasive response to the officers' commands, in addition to the officers' knowledge that (1) Allam had parked adjacent to the school for almost a month, (2) the BPD had received nine (9) calls-for-service citing a "suspicious person and

14

vehicle," and (3) Allam stated that school officials would not need to worry about him after Monday morning, all amount to reasonable suspicion of further criminal activity.  Doc. No. 30 at 2; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 36:24–37:25; *Wardlow*, 528 U.S. at 124.

Therefore, the Government satisfied its burden in showing that it meets both prongs of Allam's *Terry* stop:  Officer Hatcher had a proper justification for stopping Allam's vehicle, and the BPD officers acted within their reasonable, legitimate scope to detain Allam until he would comply with their constant requests for his driver's license.  Even if this were not the case, Allam's evasive behavior, coupled with his prior statements and conduct, amount to reasonable suspicion of further criminal activity sufficient to keep his car detained.  The court will next turn to the subject of Allam's subsequent arrest.

## B.  Allam's Arrest

Allam's principal argument rests on the notion that the BPD officers conducted an unlawful inventory of his vehicle because they lacked proper authority to arrest him in the first instance. Doc. No. 21 at 1.  According to Allam, because the BPD officers arrested him for driving with an obstructed license plate, of which the Texas Transportation Code does not provide explicit arrest authority in contrast to a "Rules of the Road" violation of the Code, the BPD officers purportedly lacked authority to arrest him.  *Id.*  Thus, Allam contends, Officer Trahan's subsequent inventory of his vehicle was unconstitutional.  The court is not persuaded by these arguments, as Allam's argument fails for multiple reasons.

"To remain within the bounds of the Fourth Amendment, a warrantless arrest must be supported by probable cause."  *Sam v. Richard*, 887 F.3d 710, 715 (5th Cir. 2018) (citing *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975)).  "'Probable cause exists when all of the facts known by a

police officer 'are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense.'" *Id.* (quoting *State v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017)).  "The test is objective, not subjective," meaning that an officer's "'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" *Id.* (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)); *see also Wren v. United States*, 517 U.S. 806, 813 (1996) (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)) ("'[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'"); *Lopez-Moreno*, 420 F.3d at 432 (citation omitted) ("[A]n officer's subjective motivations are irrelevant in determining whether his or her conduct violated the Fourth Amendment.").

Thus, Allam's argument ultimately misses the mark.   At the motion hearing, the Government proffered two additional reasons for the objective lawfulness of Allam's arrest: (1) his failure to engage his turn signal on two separate instances, in violation of Texas Transportation Code Sections 545.104(a) and (b); and (2) driving with an obstructed view, in violation of Texas Transportation Code Section 545.417.  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 30:24–31:18, 64:14–19 (Officer Trahan's testimony that he could not see out of the passenger window of Allam's car due to piles of trash); Tᴇx. Tʀᴀɴsᴘ. Cᴏᴅᴇ §§ 545.104(a)–(b) (operator of vehicle must engage turn signal when driving from parked position, and must signal for at least 100 feet before making a right-hand turn), 545.417(a) ("An operator may not drive a vehicle when it is loaded so that . . . (1) the view of the operator to the front or sides of the vehicle is obstructed.").  All three statutory provisions fall under Section 543's purview, granting the BPD officers with arrest authority for all three violations.  *See* Tᴇx. Tʀᴀɴsᴘ. Cᴏᴅᴇ § 543.001 ("Any peace officer

may arrest without warrant a person found committing a violation of this subtitle."); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.").

It is therefore irrelevant that Sergeant Kvarme stated that the subjective reason for Allam's arrest was for driving with an obstructed license plate because Officer Hatcher's observation of Allam's traffic violations serves as an objective basis to arrest Allam.[6]  *Compare* Gov't's Ex. 4, Doc. Nos. 36, 38 at 9:14–10:00 (Kvarme's subjective intent); Gov't's Ex. 3A at 3, 14 (Kvarme's subjective intent) *with* Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at  11:2–12:1, 21:20–22:25 (Officer Hatcher's live observations of Allam's traffic violations) *and* Gov't's Ex. 3 at 18 (officers' discussion regarding arresting Allam for driving with an obstructed view).  Even at the hearing, counsel for Allam admitted that Officer Hatcher had lawful authority to arrest Allam for failing to engage his turn signal.  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at  83:15–18 ("THE COURT: Could [Allam] have been arrested for failing to put on his turn signal? Would that be a valid arrest?" "Mr. Gertz: It would.").  Instead, Allam argued that his failure to engage his turn signal was "not why they arrested him."  *Id.* at 83:22.  Once more, Allam is reminded that the BPD officers' subjective

---

[6] Moreover, while the Government raises the collective knowledge doctrine in its *Response* (Doc. No. 30 at 11–12), this is unnecessary for analyzing the constitutionality of Allam's arrest.  The collective knowledge doctrine applies in one of two types of cases: "'(1) those where the arresting officer has no personal knowledge of *any* of the facts establishing probable cause, but simply carries out directions to arrest given by another officer who does have probable cause'" and "'(2) those where the arresting officer has personal knowledge of facts which standing alone do not establish probable cause but, when added to information known by other officers involved in the investigation, tips the balance in favor of arrest.'"  *United States v. Hooker*, 416 F. App'x 467, 471 (5th Cir. 2011) (emphasis in original) (quoting *United States v. Webster*, 750 F.2d 307, 323 (5th Cir. 1984).

Neither circumstance applies here as although Sergeant Kvarme made the decision to arrest Allam, he did so in the presence of Officer Hatcher, who had probable cause to arrest Allam based on his witnessed traffic violations.  Moreover, Sergeant Kvarme knew about Allam's obstructed license plate, which serves as another lawful basis to arrest Allam, as discussed further below.  *See infra.*

intent and rationales for the arrest do not matter for the purposes of the Fourth Amendment. *Richard*, 887 F.3d at 715.

Accordingly, the BPD officers had probable cause to arrest Allam based on Officer Hatcher's live observations of Allam's traffic violations.  Furthermore, in response to Allam's statutory contentions regarding Title 7, Subtitle A's lack of arrest authority, the court also finds this argument unpersuasive.  While Allam is correct in stating that Title 7, Subtitle C of the Texas Transportation Code provides officers with arrest authority for committing traffic violations of the Code, while Subtitle A does not, Allam wholly fails to mention the statutory authorization to arrest conferred in Article 14.01 of the Texas Code of Criminal Procedure.  TEX. CODE CRIM. PROC. art 14.01.  Article 14.01(b) clearly states that "[a] peace officer may arrest an offender without a warrant for *any* offense committed in his presence or within his view."  *Id.* (emphasis added).

For example, Title 7, Subtitle B of the Texas Transportation Code ("Driver's Licenses and Personal Identification Cards") does not provide explicit arrest authority for violations committed under this subsection.  Moreover, as Allam incidentally violated in the present case, Texas Transportation Code Section 521.025 makes it unlawful for a person operating a motor vehicle to refuse to display their driver's license on demand of a peace officer.  TEX. TRANSP. CODE § 521.025(a)(2) ("A person required to hold a license under Section 521.021 shall: . . . (2) display the license on the demand of a magistrate, court officer, or peace officer."); *see also United States v. Zavala*, 541 F.3d 562, 577 (5th Cir. 2008) ("[S]tate law requires a driver operating a motor vehicle to surrender his driver's license and proof of insurance when asked by a police officer"). Once more, Subtitle B of the Transportation Code does not explicitly confer police officers with arrest authority, and like Section 504.945 under Subtitle A, is a misdemeanor punishable by a fine of not more than $200.00.  *Id.* § (c); *see also id.* § 504.945(b) (obstructed license plate "punishable

by a fine of not more than $200").  This, however, does not preclude police officers from arresting offenders who violate provisions of the Code under Subtitle B.

Indeed, courts have widely held that it is an arrestable offense to violate Section 521.025 of the Transportation Code.  *See Scott v. Caldwell*, No. 6:07-CV-450, 2008 WL 2329595, at *7 (E.D. Tex. June 4, 2008) (footnote omitted) ("When Plaintiff refused to present her driver's license, she therefore immediately gave Trooper Fulton probable cause to arrest her for violating § 521.025."); *Unger v. Taylor*, No. 6:06-CV-466, 2007 WL 9711406, at *8 (E.D. Tex. Sept. 18, 2007) (holding that under article 14.01 of the Texas Code of Criminal Procedure, deputy had probable cause to arrest defendant for driving without a driver's license); *Luna v. City of Round Rock*, No. 1:21-CV-00170-RP-SH, 2022 WL 4491084, at *7 (W.D. Tex. Sept. 26, 2022) ("[T]he Court finds that the officers had probable cause to arrest Luna for failing to provide a driver's license. . . . Because Luna was operating a motor vehicle, he was required to provide the officer[s] his license under Texas law, and the officers had probable cause to arrest him."); *see also Villarreal v. State*, 631 S.W.3d 198, 207 (Tex. App. — Houston [14th Dist.] 2020, no pet.) (citing TEX. TRANSP. CODE § 521.025) ("The officer developed probable cause to arrest appellant almost immediately after the stop began because appellant did not possess a driver's license.").

Ultimately, a police officer may arrest an individual without a warrant under two exceptions:  (1) when "there is probable cause with respect to that individual" and (2) "the arrest falls [within] one of the exceptions in Article 14.01 through 14.04 of the Texas Code of Criminal Procedure."  *United States v. Thomas*, 787 F. Supp. 663, 678 (E.D. Tex. 1992) (citing *Stull v. State*, 772 S.W.2d 449, 451 (Tex. Crim. App. 1989)), *aff'd*, 983 F.2d 1062 (5th Cir. 1993).  Officer Hatcher clearly observed Allam drive with an obstructed license plate, in violation of Section 504.945 of the Transportation Code.  Allam has failed to address how Article 14.01(b) cannot

19

apply in this situation, or importantly, does not confer the BPD officers with arrest authority for this traffic violation.  *See* TEX. TRANSP. CODE 14.01(b); *Atwater*, 532 U.S. at 322 ("An officer may arrest an individual without violating the Fourth Amendment if there is probable cause to believe that the offender has committed even a very minor criminal offense in the officer's presence."); *see also State v. Johnson*, 219 S.W.3d 386, 390 (Tex. Crim. App. 2007) (Cochran, Price, & Johnson, JJ., concurring) (emphases added) ("[B]e prepared to be pulled over and ticketed, and *perhaps even arrested* (and have your car towed) if your license plate frame obscures even one of the 'starry-night stars' on your license plate. This is a Class C misdemeanor offense with a maximum fine of $200, *but it is also one for which you may be arrested*, taken to jail, and searched.").

Accordingly, the BPD officers had probable cause to arrest Allam for his two, if not three, traffic violations, consisting of failing to properly signal on two occasions, driving with an obscured view, and, while not argued by the Government, for failing to display his driver's license to Officer Hatcher and Sergeant Kvarme upon their request.  All three violations provided objective bases to arrest Allam, and Sergeant Kvarme's subjective intention is irrelevant to the instant matter.  Alternatively, the undersigned is of the opinion that Title 7, Subtitle A need not confer explicit arrest authority to the BPD officers, as Article 14.01(b) provides the relevant statutory authorization for arresting Allam for driving with an obscured license plate.  Even if the BPD officers lacked this authority under this one Transportation Code subsection, they decidedly had authority to arrest Allam under the three aforementioned grounds.  The court will therefore turn to the inventory of Allam's vehicle, and the subsequent search and discovery of synthetic marijuana, ammunition, and a rifle.

C.  <u>Inventory and Subsequent Search of Allam's Vehicle</u>

Lastly, Allam moves to suppress the evidence discovered in his vehicle as the product of an unlawful search.  Doc. No. 21 at 2.

After arresting Allam, Officers Trahan and Sergeant Kvarme conducted an inventory of Allam's SUV.  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 43:5–17; Gov't's Ex. 4, Doc. Nos. 36, 38 at 24:30 (beginning of inventory of Allam's vehicle).  During the inventory, Officer Trahan discovered Allam's black backpack wedged just behind the driver's seat and the passenger seat. He brought the backpack to the passenger seat and moved it around to determine the brand name of the backpack so that he may properly document it.  *Id.* at 56:3–57:1; Gov't's Ex. 4, Doc. Nos. 36, 38 at 25:53.  At this point, Officer Trahan discovered a marijuana grinder with marijuana residue that fell out of the backpack and landed onto the passenger seat.  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 56:20–57:24, 64:24–65:2; Gov't's Ex. 4, Doc. Nos. 36, 38 at 26:29–31 (moment when marijuana grinder fell out of Allam's backpack); *see also* Gov't's Ex. 5A.

Officer Trahan conducted a warrantless search of Allam's backpack to search for more drug paraphernalia, when he discovered two boxes of rifle ammunition, approximately one ounce of synthetic marijuana, $1,700.00 cash, and a fully loaded AR-15 style magazine.  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 58:1–7; Gov't's Ex. 4, Doc. Nos. 36, 38 at 28:05–29; *see also* Gov't's Ex. 5A.  The boxes of rifle ammunition led Officer Trahan to conduct a warrantless search of the entire vehicle in an effort to find the rifle, which he later found.  Gov't's Ex. 4, Doc. Nos. 36, 38 at 28:11–27; Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 65:16–66:6, 69:20–70:19, 71:24 ("I was doing more of a search while [Sergeant Kvarme] continued the inventory.").

"'An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might [be] kept in a towed car), and to protect against false claims of loss or damage.'" *United States v. Durham*, No. 22-20057, 2023 WL 2366986, at *3 (5th Cir. Mar. 6, 2023) (quoting *Whren v. United States*, 517 U.S. 806, 811 n.1 (1996)). Inventory searches are an exception to the warrant requirement, as they are not designed to uncover evidence of contraband or criminal activity, and are reasonable under the Fourth Amendment, so long as they are conducted pursuant to standardized regulations. *Id.* (citing *United States v. Andrews*, 22 F.3d 1328, 1334 (5th Cir. 1994)). These regulations and procedures must be consistent with "'(1) protecting the property of the vehicle's owner, (2) protecting the police against claims or disputes over lost or stolen property, and (3) protecting the police from danger.'" *Id.* (quoting *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012)). The Government satisfies its burden of establishing that officers duly complied with their department's inventory procedures through an officer's unrebutted testimony. *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999) (internal citations omitted) ("There is no requirement that the prosecution submit evidence of written procedures for inventory searches; testimony regarding reliance on standardized procedures is sufficient . . . as is an officer's unrebutted testimony that he acted in accordance with standard inventory procedures.").

At the motion hearing, Officer Trahan testified that the BPD's inventory policy was put in place to protect officers, the department, as well as the individual under arrest, and to prevent disputes that officers lost or stole property. Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at 54:22–55:17 (Officer Trahan: "It's a policy to protect myself, the department, as well as the individual that we're dealing with from valuables being taken or accused of being taken."). Such testimony satisfies the Government's burden in showing that the BPD's inventory policy is reasonable under

the Fourth Amendment.  *Durham*, 2023 WL 2366986, at *3; *McKinnon*, 681 F.3d at 209.
Moreover, Sergeant Kvarme provided unrebutted testimony that he and Officer Trahan followed
the BPD policy during the inventory of Allam's vehicle.  Doc. No. 39, Mar. 20, 2023 Hr'g Tr. at
43:5–17.  The Government has similarly satisfied its burden in establishing proper compliance
with the BPD's inventory policy.  *Lage*, 183 F.3d at 380.

Accordingly, Officer Trahan's inventory of Allam's vehicle, and subsequent discovery of
Allam's marijuana grinder that fell out of his backpack, did not constitute an unreasonable or
unlawful search of Allam's vehicle in violation of his Fourth Amendment rights.  After Officer
Trahan discovered the marijuana grinder, however, he admitted that he then proceeded to conduct
a warrantless search of Allam's vehicle.  This subsequent search of Allam's vehicle that occurred
thereafter more appropriately falls under the purview of the automobile exception to the warrant
requirement.

The automobile exception provides that a police officer may search an individual's vehicle
when they have probable cause that it contains contraband.  *United States v. Beene*, 818 F.3d 157,
164 (5th Cir. 2016); *United States v. Banuelos-Romero*, 597 F.3d 763, 767 (5th Cir. 2010) (quoting
*United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978)) ("'It is well-settled that probable
cause to search an automobile exists when trustworthy facts and circumstances within the officer's
knowledge would cause a reasonably prudent man to believe the car contains contraband.").
Moreover, once officers have probable cause to justify the search of a lawfully stopped vehicle,
probable cause "justifies the search of *every part* of the vehicle and its contents that may conceal
the object of the search."  *United States v. Ross*, 456 U.S. 798, 825 (1982) (emphasis added);
*United States v. Garza*, 833 F. App'x 601, 602 (5th Cir. 2021) (same).

Having discovered a marijuana grinder that fell out of Allam's backpack, which constitutes "drug paraphernalia," *see supra* n.3, Officer Trahan had probable cause to continue searching Allam's backpack for marijuana, a controlled substance.  TEX. HEALTH AND SAFETY CODE § 481.121(b)(1); *United States v. Phillips*, 261 F. App'x 740, 741 (5th Cir. 2008) (warrantless search of SUV did not violate Fourth Amendment where marijuana was in plain view, on car dashboard); *United States v. Lara*, 517 F.2d 209, 211 (5th Cir. 1975) ("Once the vehicle was stopped, the contraband was in plain view furnishing probable cause for the subsequent search.").  Then, once Officer Trahan discovered two boxes of rifle ammunition located within the backpack, Officer Trahan then had probable cause to search the entire vehicle to locate the rifle.[7]  *Ross*, 456 U.S. at 825; *Garza*, 833 F. App'x at 602.  Accordingly, the court has no alternative but to find that the BPD officers' warrantless search of Allam's vehicle was reasonable in the face of such plain view contraband discovered during the inventory of his car.

The undersigned therefore recommends that the Court deny the instant *Motion to Suppress Evidence* (Doc. No. 21).  First, Officer Hatcher's live observations of Allam's traffic violations produced more than reasonable suspicion to justify stopping his vehicle under the standard set forth in *Terry v. Ohio*. 392 U.S. 1 (1968).  Second, Allam's outward defiance and failure to lower his window and provide the BPD officers with his driver's license allowed the further detention of his vehicle, and officers had legitimate authority to request his license and run a computer check during the traffic stop.  Next, Allam's central contention regarding the officers' lack of arrest authority for driving with an obstructed license plate fails on multiple grounds.  Not only did officers have arrest authority under the Texas Code of Criminal Procedure, but the BPD officers had an objective basis to arrest Allam for committing multiple, separate traffic offenses, of which

---

[7] It is unlawful to possess a firearm in a school zone.  18 U.S.C. § 922(q)(2)(A).

the Transportation Code explicitly confers arrest authority.  Lastly, the BPD officers conducted a lawful inventory search of his vehicle, and once Officer Hatcher discovered the marijuana grinder, and then later, the boxes of rifle ammunition, officers had probable cause to search Allam's entire vehicle.

### III.   Recommendation

For the foregoing reasons, the undersigned recommends denying Defendant Ahmed Abdalla Allam's *Motion to Suppress Evidence* (Doc. No. 21).

### IV.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation.  Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length.  *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c).  A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within fourteen (14) days of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States

District Judge.  *See Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 24th day of April, 2023.

_____
Zack Hawthorn
United States Magistrate Judge