IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

RECEIVED
AUG 1 0 2023
By_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 1:23-CR-10 |
| | § | Judge Marcia Crone |
| AHMED ABDALLA ALLAM | § | |

## FACTUAL BASIS

The United States Attorney for the Eastern District of Texas, joined by the

defendant, **Ahmed Abdalla Allam**, and the defendant's attorney, Ryan W. Gertz,

presents this factual basis and stipulation in support of the defendant's plea of guilty to

Count One of the indictment and in support would show the following:

1.  That the defendant, **Ahmed Abdalla Allam,** stipulates to the truth of all matters set

    forth in this factual basis and stipulation, and agrees that it may be used by the

    Court in support of his plea of guilty to Count One of the indictment, alleging a

    violation of  18 U.S.C. § 922(q)(2)(A), possession of a firearm in a school zone.

2.  That the defendant, **Ahmed Abdalla Allam**, who is pleading guilty to the

    indictment, is the same person charged in the indictment.

3.  That the events described in the indictment occurred in the Eastern District of

    Texas.

4.  That on or about the date described in the indictment, the defendant knowingly

    possessed a firearm within a distance of 1,000 feet of the grounds of a school, a

    school zone as that term is defined by federal law.

5.  That had this matter proceeded to trial, the government, through the testimony of witnesses, including expert witnesses, and through admissible exhibits, would have proven, beyond a reasonable doubt, each and every essential element of the offense alleged in the indictment; specifically, the government would have proven the following stipulated facts:

a.  In January 2023, the Beaumont Police Department (BPD) learned that **Ahmed Abdalla Allam (Allam)** was sitting in his 2014 Toyota RAV4 (the SUV) for extended periods of time next to St. Anthony Cathedral Basilica School (the school) located at 850 Forsythe in Beaumont, Texas, within the Eastern District of Texas. **Allam**'s behavior caused fear and concern at the school, and between January 5 and January 28, 2023, BPD responded to nine calls-for-service related **Allam**'s presence near the school.

b.  On January 29, 2023, at approximately 4:00 p.m., BPD Officer Jacolby Hatcher (Officer Hatcher) positioned his marked unit directly behind the SUV, in the 900 block of Forsythe Street. **Allam** was inside the SUV and parked under a school-zone sign approximately forty feet across from school's property line, adjacent to the school's playground.

c.  Officer Hatcher observed that the SUV's rear license plate was obscured by a plastic frame that hid the name of the state of registration—New York—in violation of Texas Transportation Code Section 504.945(a)(7)(B).

**Factual Basis – Page 2**

d.  At approximately 9:05 p.m., Officer Hatcher observed the SUV travel a short distance down Forsythe Street before turning right onto Archie Avenue. Officer Hatcher observed that **Allam** failed to properly signal that turn in violation of Texas Transportation Code Section 545.104(b). After the turn, Officer Hatcher activated his overhead emergency lighting and the SUV stopped, still within 1000 feet of the school.

e.  Officer Hatcher approached the SUV and attempted to speak with **Allam**, but **Allam** refused to lower his window. Officer Hatcher repeated his commands and remained standing outside the SUV until backup units arrived. Approximately six minutes later, BPD Sgt. Erik Kvarme (Sgt. Kvarme) arrived and took over the traffic stop.

f.  Sgt. Kvarme spoke to **Allam** through the closed window and repeatedly asked him to lower it. But **Allam** continually refused. Eventually, Sgt. Kvarme reminded **Allam** that he was previously cited (on January 25) for the license-plate violation but had failed to correct it and, consequently, he was being placed under arrest for the traffic violation. At that time, almost twelve minutes after the traffic stop began, **Allam** complied with the officers and exited the SUV. The officers then placed **Allam** in custody and called a tow-truck to take the SUV.

g.  Pursuant to BPD policy, officers performed an inventory of the SUV. Early in the inventory, Officer Jakob Trahan observed a small backpack located on the center

**Factual Basis – Page 3**

of the-rear passenger floorboard. The backpack was within **Allam**'s reach at the time of the traffic stop.

h.  Officer Trahan picked up the backpack to determine if it had a brand-name so he could document it accurately on the inventory sheet. While holding the backpack, Officer Trahan noticed that it was partially unzipped. Officer Trahan looked through the opening and saw what he recognized to be a plastic marihuana grinder with marihuana residue on it. By his training and experience, the officer knew that such devices were drug paraphernalia used to grind up marihuana and synthetic marihuana. At that point, Officer Trahan believed he had probable cause to search the backpack and vehicle for narcotics.

i.  Officer Trahan opened the backpack and found, in addition to the grinder, a fully-loaded AR-15-style magazine; two 50-count boxes of rifle ammunition, and a clear plastic bag that contained less than two ounces of suspected synthetic marihuana. Synthetic marijuana is considered an unlawful controlled substance under Texas law.

j.  Officer Trahan continued the inventory and found an AR-15 style rifle located on the rear-passenger floorboard. The officer found another 50-count box of ammunition on the floorboard near the rifle.

k.  The rifle, magazine, and ammunition that were recovered from Allam's possession are described as one (1) Diamondback Firearms, Model DB15, multi-caliber rifle

bearing serial number DB2615207; one (1) thirty-round magazine; and one-hundred and fifty (150) rounds of .556 caliber ammunition.

l.   Officer Trahan also found Apple phones and computers, a digital camera equipped with a telephoto lens, and $1,705 in U.S. Cu   rrency.

m.   An ATF firearm and nexus expert examined the firearm described above and determined that it was manufactured outside the State of Texas and, therefore, affected interstate commerce. The expert further determined that the firearm functioned as designed and was firearm within the meaning of federal law.

### DEFENDANT'S SIGNATURE AND ACKNOWLEDGMENT

6.   I have read this factual basis and stipulation and the indictment or have had them read to me and have discussed them with my attorney.  I fully understand the contents of this factual basis and stipulation and agree without reservation that the government would have proven all of these facts beyond a reasonable doubt.


Dated:  ___8/10/23___                    _____

**Ahmed Abdalla Allam**
Defendant

### DEFENSE COUNSEL'S SIGNATURE AND ACKNOWLEDGMENT

7.   I have read this factual basis and stipulation and the indictment and have reviewed them with my client, **Ahmed Abdalla Allam**.  Based upon my discussions with the defendant, I am satisfied that the defendant understands the factual basis and

stipulation as well as the indictment, and is knowingly and voluntarily agreeing to

these stipulated facts.

Dated: ___8/10/23___

_____
Ryan W. Gertz
Attorney for the Defendant


Respectfully submitted,

DAMIEN M. DIGGS
UNITED STATES ATTORNEY

_____
John B. Ross
Assistant United States Attorney
Texas Bar No. 00788325
550 Fannin Street, Suite 1250
Beaumont, Texas  77701-2237
(409) 839-2538
(409) 839-2550 (fax)
john.ross5@usdoj.gov