

1

1      UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF TEXAS
2                 BEAUMONT DIVISION

3
   UNITED STATES OF AMERICA   |  DOCKET 1:23-CR-10
4                             |
                             |  AUGUST 10, 2023
5   VS.                       |
                             |  3:13 P.M.
6                             |
   AHMED ABDALLA ALLAM        |  BEAUMONT, TEXAS
7
   ---------------------------------------------------------
8

9          VOLUME 1 OF 1, PAGES 1 THROUGH 27

10        REPORTER'S TRANSCRIPT OF CHANGE OF PLEA

11      BEFORE THE HONORABLE MARCIA A. CRONE
              UNITED STATES DISTRICT JUDGE
12
   ---------------------------------------------------------
13

14  APPEARANCES:

15  FOR THE GOVERNMENT:    JOHN ROSS
                          JOE BATTE
16                        U.S. ATTORNEY'S OFFICE
                          550 FANNIN STREET
17                        SUITE 1250
                          BEAUMONT, TEXAS 77701
18

19  FOR THE DEFENDANT:    RYAN GERTZ
                          TOM KELLEY
20                        GERTZ KELLEY LAW FIRM
                          2630 LIBERTY
21                        BEAUMONT, TEXAS 77702

22

23

24

25

```
 1  COURT REPORTER:         RUTH C. WEESE, RDR-CSR
                            FEDERAL OFFICIAL REPORTER
 2                          300 WILLOW, SUITE 104
                            BEAUMONT, TEXAS  77701
 3

 4
       PROCEEDINGS REPORTED USING COMPUTERIZED STENOTYPE;
 5     TRANSCRIPT PRODUCED VIA COMPUTER-AIDED TRANSCRIPTION.

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

8-10-23 Change of Plea Hearing

3

1          (OPEN COURT, DEFENDANT PRESENT.)

2          THE COURT:  The first matter this afternoon is

3  1:23-CR-10, *United States of America vs. Ahmed Abdalla*

4  *Allam*.

5          MR. ROSS:  Hello, Your Honor.  John Ross and

6  Joe Batte here for the USA; we are ready.

7          MR. GERTZ:  Judge, Ryan Gertz here for Mr.

8  Allam.  Tom Kelley is present as well, Judge.

9          THE COURT:  All right.  We will have the

10  Defendant placed under oath.

11          (Defendant sworn.)

12  BY THE COURT:

13  Q.    Please state your full name.

14  A.    My name is Ahmed Abdalla Allam.

15  Q.    How old are you?

16  A.    I'm 26.

17  Q.    How far did you go in school?

18  A.    Sorry?

19  Q.    How far did you go in school?  What grades of

20  school did you complete?

21  A.    College.

22  Q.    Okay.  I understand you intend to plead guilty to

23  Count 1 of the indictment.  Before accepting your plea of

24  guilty, the Court must inform you of certain rights you

25  have under the law and determine you understand the

4

1  consequences of your plea of guilty.  Your answers will

2  be under oath, on the record and with the assistance of

3  your attorney.  The questions will concern the charges

4  against you.  If you feel that you need further

5  explanation about any part of these proceedings, let me

6  know and I will answer your question and allow you to

7  consult privately with your attorney.  You are now under

8  oath, and if you answer any of my questions falsely, your

9  answers may later be used against you in another

10  prosecution for perjury or making a false statement.

11          Have you discussed the facts of this case, the

12  charges pending against you and any possible defenses you

13  may have and your decision to plead guilty with your

14  attorney?

15  A.    Yes.

16  Q.    Are you satisfied that your attorney has fully

17  considered these factors?

18  A.    Sorry?

19  Q.    Are you satisfied that your attorney has fully

20  considered these factors?

21  A.    What factors?

22  Q.    Well, the charges pending against you, the

23  possible defenses, what we just discussed?

24  A.    Can you repeat it, please.

25  Q.    Yes.  The first question was have you discussed

5

1  the facts of this case, the charges pending against you,

2  any possible defenses you may have and your decision to

3  plead guilty with your attorney, which you said yes.

4  Then I said are you satisfied that your attorney has

5  fully considered these factors.  The factors relate back

6  to those items that I listed in the first question.

7  A.     Yes, Your Honor.

8  Q.     Are you fully satisfied with your counsel's

9  representation and advice given to you in this case?

10  A.     Yes.

11  Q.     Are you a citizen of the United States?

12  A.     Yes, ma'am.

13  Q.     If you desire to change your plea of guilty to a

14  plea of not guilty at any time during these proceedings,

15  I will permit you to do so.  Have you read and discussed

16  the indictment with your attorney?

17  A.     Yes.

18  Q.     After consulting with your attorney do you

19  understand the charges against you?

20  A.     Yes.

21  Q.     So that you will fully understand the nature of

22  the charges, the Court will now inform you of the

23  elements of the offense with which you are charged.  You

24  are charged in Count 1 of the indictment with a violation

25  of 18 U.S.C. Section 922(q)(2)(A), possession of a

6

1  firearm in a school zone.  The essential elements which

2  must be proven beyond a reasonable doubt to establish a

3  violation of this statute are:

4            One, the Defendant knowingly possessed a

5  firearm as charged;

6            Two, the Defendant's possession of the firearm

7  occurred within a distance of one thousand feet of the

8  grounds of a school, a place the Defendant had reasonable

9  cause to believe was a school;

10           And, three, the firearm possessed traveled in

11  interstate commerce, that is, before the Defendant

12  possessed the firearm it had traveled at some time from

13  one state to another.

14           So, again, do you understand the nature of the

15  charge and each of the elements of the offenses that have

16  just been explained to you?

17  A.    Yes, but I didn't know it was a school.  I know

18  the charge.  I understand the charge.

19  Q.    You didn't know it was a school zone?

20  A.    No.

21  Q.    That's an element.

22           (Attorney confers with client.)

23           THE COURT:  One of the elements is it's a

24  place that the Defendant had reasonable cause to believe

25  was a school, so I think there were signs and things like

7

 1  that.

 2          MR. GERTZ:  As a practical matter, there was a

 3  school zone sign nearby.  So...

 4          THE COURT:  Right.  But he has got to admit

 5  that.  I mean that's part of the elements.

 6          MR. GERTZ:  I understand.  We're agreeing with

 7  it, that he knew he was within a thousand feet of a

 8  school.  Where we are hung up being on the school

 9  versus --

10          THE COURT:  No, we are not talking about that.

11  We are talking about he has to have reasonable cause to

12  believe he was in a school zone.

13          MR. GERTZ:  Right, which the law defines is

14  within a thousand feet of the school grounds.

15          THE COURT:  Right.  But he has got to admit

16  that.  That you knew you were within a thousand feet of a

17  school; is that correct?

18          THE DEFENDANT:  Yes.

19  BY THE COURT:

20  Q.    Okay.  And were you -- did you see the sign that

21  said school zone?

22  A.    What?

23          (Attorney confers with client.)

24  A.    Yes.

25  Q.    So you understand the nature of the charge and

8-10-23 Change of Plea Hearing

8

1  each of the elements of the offense; is that correct?

2  A.    Yes, Your Honor.

3  Q.    Do you understand that these are the matters the

4  Government is required to prove beyond a reasonable doubt

5  in order to convict you of the offense charged in the

6  indictment?

7  A.    Sorry?

8  Q.    Do you understand that this is what the Government

9  has to prove beyond a reasonable doubt in order to

10  convict you of the offense charged in the indictment?

11  A.    Yes, Your Honor.

12  Q.    Do you need further explanation by the Court or by

13  your attorney?

14  A.    No, Your Honor.

15  Q.    I must advise you of the mandatory minimum penalty

16  provided by law, if any, and the maximum possible penalty

17  that may be imposed upon you.  If I accept your plea of

18  guilty you could imprisoned for not more than five years,

19  a fine not more than $250,000 or twice the pecuniary gain

20  to the Defendant or loss to the victim, whichever is

21  greater, or both, followed by a term of supervised

22  release of not more than three years.  In addition, you

23  would be required to pay a special assessment of $100.

24  Do you understand the range of punishment that applies in

25  this case?

9

1   A.      Yes, I understand that's the maximum.

2   Q.      Right.  It's a range.  It's up -- not more than

3   five.  Do you understand the range?

4   A.      Yes, Your Honor.

5   Q.      Supervised release means that after you are

6   released from prison, you will be supervised by the

7   probation department under conditions set by the court.

8   A term of supervised release is imposed in addition to

9   any sentence of imprisonment.  A violation of the

10  conditions of supervised release can subject you to

11  imprisonment for a period of time or even the entire term

12  of supervised release without credit for any time already

13  served.  You would be granted a hearing on any alleged

14  violations and, if the Court finds a violation has

15  occurred, it will determine the term of imprisonment

16  after consulting the advisory sentencing guidelines.

17          If applicable, the Court may order you to make

18  restitution to any victim or to forfeit certain property

19  to the government.

20          The United States Sentencing Commission has

21  issued advisory guidelines for judges to consult in

22  determining the sentence in a criminal case.  The Court

23  must consider but may depart from these guidelines when

24  reasonable under the circumstances.

25          Have you and your attorney talked about how

10

1  the Sentencing Commission guidelines might apply to your

2  case?

3  A.    Yes.

4  Q.    Do you understand that the Court will not be able

5  to determine the advisory guideline sentence of your case

6  until after the presentence report has been completed and

7  you and the Government have had an opportunity to

8  challenge the facts reported by the probation officer?

9  A.    Yes, Your Honor.

10 Q.    Do you understand the sentence imposed might be

11 different from any estimate your attorney may have given

12 you?

13 A.    Sorry?

14 Q.    Do you understand the sentence imposed may be

15 different from any estimate that your attorney may have

16 given you?

17 A.    What does that mean?

18 Q.    Well, your attorney may have estimated the range

19 or the punishment may be X.  But the sentence may be

20 different from that.  Do you understand the sentence

21 imposed can be different from any estimate your attorney

22 may have given you, but it would be within the --

23 A.    Yes, Your Honor.

24 Q.    -- guideline range.  Do you also understand that

25 after it's been determined what guideline applies to your

1  case the judge has the authority to impose a sentence

2  that is more severe or less severe than the sentence

3  called for by the guidelines?

4            (Attorney confers with client.)

5  A.     Yes.

6  Q.     Do you understand if the sentence is more severe

7  than you expected you will still be bound by your plea

8  and will have no right to withdraw it?

9            (Attorney confers with client.)

10  A.     Yes, Your Honor.

11  Q.     Do you understand that under some circumstances

12  you or the Government may have the right to appeal any

13  sentence that I impose?

14  A.     Yes, Your Honor.

15  Q.     Do you understand you will be required to serve

16  the entirety of any term of incarceration that's imposed

17  except for good time deductions.  Parole is not

18  available?

19  A.     Yes.

20  Q.     Do you understand that the offense to which you

21  are pleading guilty is a felony offense; that if your

22  plea is accepted you will be judged guilty of that

23  offense and that such adjudication may deprive you of

24  valuable civil rights such as the right to vote, the

25  right to hold public office, the right to serve on a

12

1   jury, the right to possess any kind of firearm and

2   federal benefits?

3   A.      Yes, Your Honor.

4   Q.      Do you understand the sentence that could be

5   imposed upon you by the Court if you plead guilty?

6   A.      Sorry?

7   Q.      Do you understand the sentence that could be

8   imposed upon you by the Court if you plead guilty?

9   A.      Yes, Your Honor.

10  Q.      Is your plea voluntary?

11  A.      Yes, Your Honor.

12  Q.      It is the result of force, threats or promises by

13  anyone to persuade you to plead guilty?

14  A.      No.

15  Q.      Is your decision to plead guilty based on

16  discussions between the Government's attorney, your

17  attorney and you?

18  A.      Yes, Your Honor.

19  Q.      Have you ever been treated for any mental illness

20  or addiction to narcotic drugs?

21  A.      What?

22  Q.      Have you ever been treated for any mental illness

23  or addiction to narcotic drugs?

24  A.      No, Your Honor.

25  Q.      Are you now under the influence of any drug,

8-10-23 Change of Plea Hearing

13

1 medication or alcoholic beverage?

2 A.    No, Your Honor.

3        THE COURT:  Does counsel for the Government or

4 counsel for defense have any doubt as to the Defendant's

5 competence to plead guilty at this time?

6        MR. ROSS:  The Government does not, Your

7 Honor.

8        MR. GERTZ:  No, Your Honor.

9 BY THE COURT:

10 Q.    And, Mr. Allam, do you understand that you have a

11 right to plead not guilty to any offense charged against

12 you and to persist in that plea?

13 A.    Yes, Your Honor.

14 Q.    If you plead not guilty you have the right to a

15 trial by jury, the right to the assistance of counsel for

16 your defense, including appointed counsel if you are

17 unable to afford an attorney, the right to file motions

18 making legal challenges to the Government's case against

19 you, you have the right to be free from compelled

20 self-incrimination, the right to see and hear all the

21 witnesses and have them cross-examined by your attorney

22 in your defense, the right on your own part to testify or

23 decline to testify, the right to issue subpoenas or

24 compulsory process to compel the production of evidence

25 and the attendance of witnesses on your behalf, and the

1  right to a speedy and public trial.

2          If the Court accepts your plea of guilty there

3  will be no trial, so by pleading guilty you waive the

4  right to a trial and these other rights.  Do you

5  understand?

6  A.    Yes, Your Honor.

7  Q.    I understand there is no plea agreement in this

8  case.  Okay.  The Government is now going to make a

9  proffer of proof of the evidence it would offer at the

10 time of trial to support the charges against you.

11         MR. ROSS:  If this matter were to proceed to

12 trial, Your Honor, we would prove every element of the

13 charges beyond a reasonable doubt through admissible

14 evidence as follows and the stipulation.  I am

15 summarizing from the document styled factual basis in

16 this case.

17         The factual basis begins with some background

18 information.  It explains how the Beaumont Police

19 Department became aware of Allam's presence near a

20 school.  And then on January 29th, 2023, at approximately

21 4:00 p.m. a Beaumont Police Department officer positioned

22 his marked patrol unit directly behind an SUV that

23 belonged to and was occupied by Mr. Allam in the 900

24 block of Forsythe Street.  Allam was inside of the SUV

25 and parked under a school zone approximately 40 feet

1   across from the school's property line adjacent to the

2   school's playground.  The officer observed that the rear

3   license plate was obscured which was a traffic violation

4   and at approximately 9:05 p.m. the officer observed the

5   SUV move a short distance and failed to signal a turn as

6   described here in the factual basis.

7                The officer conducted a traffic stop, spoke

8   with Allam.  The factual basis explains how the traffic

9   stop extended over a period of approximately ten minutes

10   before Mr. Allam was placed under arrest for the traffic

11   violations.  So after that pursuant to BPD policy,

12   officers performed an inventory search of the SUV.  Early

13   in the inventory an officer observed a small backpack

14   located in the center of the rear passenger floorboard

15   and it was within Allam's reach at the time of the

16   traffic stop.  The officer picked up the backpack to

17   determine if it had a name for his inventory.  While

18   holding it he noticed it was partially unzipped and he

19   could see what he recognized to be a marijuana grinder

20   inside of the backpack.  Based on his training and

21   experience, he knew that that was drug paraphernalia used

22   to grind up marijuana.  At that point he believed he had

23   probable cause to search the backpack and the vehicle for

24   narcotics.

25                When he opened the backpack, the officer found

16

1  in addition to the grinder a fully loaded AR-15 style

2  magazine and two 50-count boxes of rifle ammunition and

3  also some what was believed to be at the time synthetic

4  marijuana.  He continued the inventory and search and

5  found an AR-15 style rifle located on the rear passenger

6  floorboard.  The officer found another 50-count box of

7  ammunition on the floorboard near the rifle.  The rifle,

8  magazine and ammunition that were recovered from Allam's

9  possession are described as one Diamond Back Firearms

10 Model DB15 multi-caliber rifle bearing serial number

11 DB2615207, also one 30-round magazine and 150 rounds of

12 ammunition.

13          The officer also found some computers and a

14 digital camera with a telephoto lens and some United

15 States currency.

16          Finally, an ATF firearm and nexus expert

17 examined the firearm described above and determined that

18 it was manufactured outside of the State of Texas and

19 therefore affected interstate commerce.  The expert also

20 determined that the firearm functioned as designed and

21 was a firearm within the meaning of federal law.

22          I would also note, Your Honor, that in

23 paragraph four of the factual basis, the Defendant

24 stipulates that he knowingly possessed this firearm.

25 That concludes my summary of the factual basis, Your

 1  Honor.

 2  BY THE COURT:

 3  Q.    All right.  Do you acknowledge and agree with the

 4  Government's summary of the facts constituting proof of

 5  the commission of the offense and the charges against you

 6  in the indictment in every respect?

 7  A.    Repeat that.

 8  Q.    Yes.  Do you acknowledge and agree with the

 9  Government's summary of the facts constituting proof of

10  the commission of the offense and the charges against you

11  in the indictment in every respect?

12  A.    Yes, Your Honor.  It's just a total of 150 rounds.

13  Q.    What?

14  A.    The way he mentioned it and the way it's written

15  as if I have more than 150.

16          MR. GERTZ:  It was a total of 150 rounds,

17  that's what it says.

18          THE COURT:  Okay.

19          MR. GERTZ:  It's fine.

20  BY THE COURT:

21  Q.    Okay.  I am not focusing on that.  All right.  So

22  have you signed the document embodying the factual basis

23  for your plea?

24  A.    Yes, Your Honor.

25  Q.    Do you understand and agree with it?

18

A.     Yes, Your Honor.  It is just there's a few errors
that I don't know if we could change or fix.

            (Attorney confers with client.)

            THE COURT:  Well, Mr. Gertz, I mean if there
is something you want to bring up, otherwise it is as it
is.

            (Attorney confers with client.)

            MR. GERTZ:  Judge, it's a hyper technical
factual issue, but it's in paragraph 5A.  The way it
reads between January 5th and January 28th.  He is saying
he wasn't there that whole time.  He may have been there
on January 5th which is when he had an interaction with
police on a day that may be January 5th and then he was
there in the days leading up to January 29th, but he
wasn't just sitting there from January 5th.

            THE COURT:  Well, I didn't say that.  It just
says between that date, January 5th and January 28th,
2023, the Beaumont Police Department responded to nine
calls for service related to Allam's presence near the
school.  They are just talking about the Beaumont Police
Department responding to nine calls.  The calls were
having to do with you being near the school.  Whether you
were right at that moment near the school, the continuous
period, that's not what that says.  It just says within
that time frame there were nine calls for service on

19

1    different days, different times.

2              THE DEFENDANT:  It wasn't me at the school for

3    that amount of time.  I just wanted to make sure

4    that's --

5              THE COURT:  Okay.

6              MR. GERTZ:  Just making sure that we are not

7    agreeing that he was sitting there that whole time.

8              THE COURT:  No, I don't think that's what this

9    says.

10              MR. GERTZ:  Good.

11              THE COURT:  Okay.

12              MR. GERTZ:  We are good, Judge.

13              THE COURT:  No problems?  We don't need to

14    change anything?  Okay.  Are there any other changes that

15    you would offer?

16              MR. GERTZ:  He is also mentioning that the way

17    it is presented they are talking about 150 rounds.  It

18    was a total of 150 rounds, not 150 plus 50 plus 30.  He

19    is just saying it was -- it is not important to the

20    outcome.  It is just 150 rounds total which is what I

21    think Mr. Ross said.

22              THE COURT:  Well, it looks to me on K that it

23    is talking about a 30-round magazine and a 150-round

24    magazine.

25              MR. GERTZ:  I think that's describing the

20

1   magazine.  I don't think that's describing the amount

2   of --

3            THE COURT:  What was -- I understand.

4            MR. GERTZ:  So what was --

5            THE COURT:  The ammunition was 150 rounds, but

6   the magazines could hold capacity for a certain amount,

7   different quantities.

8            MR. GERTZ:  Correct.  That's what he's

9   clarifying.

10           THE DEFENDANT:  Also, the firearm was boxed

11  and it had multiple things on top of it.

12           THE COURT:  Well, okay.

13           THE DEFENDANT:  They said nexus expert had

14  done a review or something to do with that.

15           MR. GERTZ:  Just means it wasn't made in

16  Texas, traveled outside the State of Texas.

17           THE DEFENDANT:  Basically saying that it

18  mentioned that the bag was within reach, which is another

19  showing me as if I was about to do something or the

20  backpack had no firearm within the bag.

21           THE COURT:  Had a magazine.

22           THE DEFENDANT:  Just the magazine.

23           THE COURT:  Okay.

24           THE DEFENDANT:  And the backpack was also

25  closed.

21

1       THE COURT:  Well, I thought they could see a

2   marijuana grinder or something like that.

3       MR. GERTZ:  My recollection of the video is he

4   grabs the bag and it's open about this much.  He looks in

5   and you can see it on the body camera.

6       THE COURT:  Okay.  All right.  Well, I don't

7   see there were any --

8       MR. GERTZ:  It is not change worthy.

9       THE COURT:  -- substantive changes that need

10  to be made.  So anything else?

11      MR. GERTZ:  No.

12      THE COURT:  Tell me in your own words what you

13  did wrong.

14      THE DEFENDANT:  I was within a thousand feet

15  and I possessed --

16      THE COURT:  A thousand feet of what?

17      THE DEFENDANT:  Of the school.

18      THE COURT:  Um-hmm.

19      THE DEFENDANT:  Possessed a firearm and it

20  wasn't intentionally.  I didn't know, but --

21      THE COURT:  Well, you knew you had the

22  firearm, right?

23      THE DEFENDANT:  No, I knew I had the firearm.

24  I didn't know that I was within the school.  I didn't

25  step foot into the school.

22

1           THE COURT:  Right.  It's not saying that.
2           THE DEFENDANT:  I had no idea.  I was just
3  like I said, I was having issues with the police officers
4  and I needed a place, you know, where there was a camera.
5  Like I said, I'm not from here.  I wasn't in a place next
6  to a camera.  I was not positioned next to the
7  playground.  The playground was more than 150 feet away
8  from where I was parked.
9           THE COURT:  That seems to not quite be
10 accurate.
11          MR. GERTZ:  It is still within a thousand feet
12 of the school.
13          THE DEFENDANT:  It is within a thousand feet.
14          THE COURT:  All right.
15          THE DEFENDANT:  I was also sleeping in my
16 vehicle.  I was -- like I said, I was not in the best
17 place in my life and I was again to myself.  I did not,
18 as you mentioned in another hearing, did not threaten
19 anyone, did not speak with anyone, did not brandish --
20          THE COURT:  I never had a hearing with you
21 before.
22          THE DEFENDANT:  But the stuff is not mentioned
23 here.
24          THE COURT:  This is just a factual basis, just
25 a synopsis.  It is not everything, just little --

8-10-23 Change of Plea Hearing

23

1    THE DEFENDANT:  I just don't want it to

2  affect --

3    THE COURT:  There is only certain elements of

4  the offense.  If you hit those elements that's enough.

5  It doesn't matter, really, the other parts are surplus

6  charges I guess you could say.

7    MR. GERTZ:  Right.

8    THE COURT:  I find there's a proper factual

9  basis for the plea.  And, Mr. Gertz, has the Defendant

10  been competent and able to cooperate with you?

11    MR. GERTZ:  Yes, Judge.

12    THE COURT:  Do you know of any legal reason

13  why your client should not plead guilty?

14    MR. GERTZ:  No, Judge.

15    THE COURT:  Do you join in his decision to

16  plead guilty?

17    MR. GERTZ:  Well, let me back up and say aside

18  from the issues that we have already raised and the Court

19  has already ruled on, we don't know of any other reason

20  to not plead guilty, legal reason.

21    THE COURT:  Do you join in his decision to

22  plead guilty?

23    MR. GERTZ:  Yes, Judge.

24  BY THE COURT:

25  Q.    And, Mr. Allam, do you have any questions you

1 would like to ask about the charges, your rights, the

2 sentencing possibilities or anything else regarding this

3 matter?

4 A.     Not really.  I just -- if you could just explain

5 the process to me because he -- my lawyer explained to me

6 how we plead guilty, we changed to not guilty and then

7 something comes after.

8 Q.     Once you have pled guilty, then there's an -- I

9 will explain it in a minute, but the probation talks with

10 you and they prepare a presentence investigation and

11 report and they will calculate the sentencing guidelines

12 and they will put in factors that might affect the

13 sentence and then you are able to -- you would be

14 interviewed, your attorney can be with you.  Then once

15 they prepare the report, then you look at it and you can

16 make objections or ask for clarifications and things like

17 that.  And then finally when the sentence report --

18 presentence report is completed, then you come for

19 sentencing.

20 A.     Sentencing before talks with the probation?

21 Q.     No, after the talks with the probation, there's a

22 report, a final report.  Probation will make a

23 recommendation.  But the Court is not bound by that.

24 It's a recommendation of probation.  Then I look at the

25 report and then you come for sentencing and then I will

8-10-23 Change of Plea Hearing

25

1  sentence based on the report and anything your attorney

2  may have brought up or the Government for that matter.

3  A.     And then I would have a chance to appeal.

4  Q.     Oh, yes.

5         MR. GERTZ:  After sentencing.

6         THE COURT:  Okay.

7  A.     I think that's everything.

8  Q.     Okay.  Are you entering your plea of guilty

9  knowingly, freely, voluntarily and with the advice of

10 counsel?

11 A.     Yes, Your Honor.

12 Q.     How do you plead as to the offense charged in

13 Count 1 of the indictment, guilty or not guilty?

14 A.     Guilty, Your Honor.

15        THE COURT:  It is the finding of the Court in

16 the case of *United States vs. Ahmed Abdalla Allam* that

17 the Defendant is fully competent and capable of entering

18 an informed plea, the Defendant understands the nature of

19 these proceedings and understands the consequences of his

20 plea of guilty, that his plea of guilty is a knowing and

21 voluntary plea supported by an independent basis of fact

22 containing each of the essential elements of the offense

23 and the Defendant intended to do the acts he committed.

24 His plea is, therefore, accepted and he is now judged

25 guilty of that offense.

26

1          A written presentence report will be prepared

2     by the probation office to assist the Court in

3     sentencing.  You will be asked to give information for

4     the report and your attorney may be present if you wish.

5     You and your counsel will review and fully discuss the

6     presentence report before the sentencing hearing and you

7     may make any objections you deem necessary.  You and your

8     attorney will have an opportunity to address the Court at

9     the sentencing hearing.

10          The Defendant is now referred to the probation

11    office for a presentence investigation and report.  And

12    Defendant is remanded to the custody of the United States

13    Marshal and pending preparation of the presentence report

14    will again be delivered to this court for purposes of

15    sentencing.  If there's nothing further, then you are

16    excused.

17          (Proceedings concluded, 3:42 p.m.)

18

19

20

21    COURT REPORTER'S CERTIFICATION

22          I HEREBY CERTIFY THAT ON THIS DATE, OCTOBER 4,

23    2023, THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

24    RECORD OF PROCEEDINGS.

25



RUTH C. WEESE, RDR, CSR

TEXAS CSR NO. 9493 Expiration Date: 07-31-2024